UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Elizabeth Wright-Cray

    v.                                          Civil No. 24-cv-139-SE
                                                      Opinion No. 2025 DNH 088

Frank Bisignano,[1] Commissioner of
the Social Security Administration

O R D E R

      Elizabeth Wright-Cray challenges the denial of her application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). An administrative law judge ("ALJ") found that Wright-Cray retained the residual functional capacity to perform light work with certain limitations. Relying on the testimony of an impartial vocational expert, the ALJ found that Wright-Cray can perform jobs that exist in significant numbers in the national economy. Accordingly, the ALJ concluded that Wright-Cray was not disabled as defined by the regulations, see 20 CFR § 404.1505(a), and the Commissioner therefore denied her application for disability benefits.

      Wright-Cray moves to reverse the Commissioner's decision. Doc. no. 5. She argues that the ALJ erred in finding that certain of her impairments were not severe. She further argues that the ALJ erred in her residual functional capacity assessment by failing to evaluate properly Wright-Cray's medical provider's opinion and consider the side effects of her medications. The Commissioner moves to affirm, arguing that the ALJ's decision was supported by substantial evidence. Doc. no. 8. For the reasons discussed below, the court denies Wright-Cray's motion to reverse and grants the Commissioner's motion to affirm.

---

[1] In May 2025, Frank Bisignano was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), he automatically replaces the nominal defendant, the Commissioner of the Social Security Administration.

Standard of Review

For the purpose of review under § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. Biestek v. Berryhill, 587 U.S. 97, 102 (2019). Substantial evidence is "more than a mere scintilla," id. at 103, and exists, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion," Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis, "such that the answer at each step determines whether progression to the next is warranted." Sacilowski, 959 F.3d at 433; 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Sacilowski, 959 F.3d at 433. At the first three steps, the claimant must prove that (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment; and (3) the impairment meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii).

If the claimant meets her burden at the first two steps of the sequential analysis, but not at the third, the ALJ assesses the claimant's residual functional capacity ("RFC") before proceeding to Step Four. Id. § 404.1520(e). RFC measures the maximum amount a person can do in a work setting despite the limitations caused by her impairments. Id. § 404.1545(a)(1). At Step Four, the

claimant must establish that her RFC is insufficient to perform any of her past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ proceeds to Step Five, in which the Social Security Administration has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment as well as the claimant's age, education, and work experience. See id. § 404.1520(a)(4)(v). If such jobs exist, the claimant is not disabled. Id. If they do not, she is disabled. Id.

## Background

A detailed factual background can be found in Wright-Cray's statement of facts (doc. no. 5-2), the Commissioner's statement of facts (doc. no. 7), and in the administrative record (doc. no. 4). The court provides a brief summary of the case here.

Wright-Cray has reported a history of medical issues, including blackouts and headaches. From January 2021 through May 2023, she saw various doctors to treat her symptoms. She has been treated with several oral medications and Botox injections, the latter of which oftentimes helped reduce the severity of her headaches.

In 2022, Wright-Cray was diagnosed with post-traumatic stress disorder, major depressive disorder, and agoraphobia with panic disorder. She was prescribed additional medications to help manage the symptoms associated with those diagnoses.

On September 23, 2021, Wright-Cray filed an application for disability insurance benefits, alleging that she was disabled because of postural tachycardia syndrome, Duane's

syndrome, disc disease, migraines, syncope, Raynaud's phenomenon, asthma, PTSD, anxiety, and insomnia. She alleged a disability onset date of March 11, 2021.

The Social Security Administration denied Wright-Cray's application at the initial level and again after a request for reconsideration. Wright-Cray then requested a hearing in front of an ALJ. On July 12, 2023, the ALJ held an online video hearing. Wright-Cray, who was represented by an attorney, appeared and testified.

On August 30, 2023, the ALJ issued an unfavorable decision. She found that Wright-Cray had not engaged in substantial gainful activity since her alleged onset date of March 11, 2021. At Step Two, the ALJ found that Wright-Cray had three severe medically determinable impairments: anxiety, depression, and personality disorder. The ALJ found that Wright-Cray's migraines were not a severe impairment, relying in part on the opinion of Dr. Stephanie Green. At Step Three, the ALJ found that Wright-Cray's impairments individually or in combination did not meet or equal a listed impairment.

The ALJ then proceeded to assess Wright-Cray's RFC. After reviewing the evidence in the record, the ALJ determined that Wright-Cray had the RFC to perform light work with certain limitations. Specifically, she found that Wright-Cray:

> could never climb ladders, ropes or scaffolds. She can only occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. She can never work around hazards, such as dangerous moving machinery and unprotected heights. Day to day, the claimant is capable of work that is simple and routine with simple instructions. She can only perform work that does not require contact with the general public, tandem tasks or a fast pace (belt-paced work or work with high production standards). The claimant can sustain attention and persist at simple tasks for two hours at a time over an eight-hour workday, 40-hour work week, with typical breaks (occurring every two hours of about 15 minutes after the second and sixth hour, and with a 30-minute meal break mid-shift).

Admin. Rec. at 16.

In making that finding, the ALJ evaluated Wright-Cray's subjective complaints and considered the opinions of several physicians. The ALJ discussed a mental RFC assessment from Wright-Cray's treating physician, Dr. Julie Morrison. Dr. Morrison opined that Wright-Cray had "marked" restrictions in several work-related tasks, including among others the ability to maintain concentration and attention and make simple decisions. The ALJ found Dr. Morrison's opinion not persuasive, as it was contrary to Dr. Morrison's treatment notes and Wright-Cray's reports throughout the record of her experiences of daily living.

In response to hypothetical questions that the ALJ posed, the vocational expert, Michael Smith, testified that a person with Wright-Cray's age, education, past work experience, and RFC (as assessed by the ALJ) could not perform Wright-Cray's past work. However, that person could perform the job duties of occupations existing in significant numbers in the national economy. These occupations included Collator Operator, Mail Clerk, Photo Machine Operator, Document Preparer, Ticket Counter, and Eyeglass Frame Polisher. Based on the ALJ's RFC assessment and Smith's testimony, the ALJ found at Step Four of the sequential process that Wright-Cray could not perform any past relevant work, but found at Step Five that she could perform other jobs and was not disabled.

The Appeals Council denied Wright-Cray's request for review of the ALJ's decision, making it the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 422.210(a); see Sims v. Apfel, 530 U.S. 103, 107 (2000). This action followed.

Discussion

Wright-Cray argues that the ALJ's conclusion as to her RFC is not supported by substantial evidence because she erred at Step Two by determining that Wright-Cray's migraines

5

and small fiber neuropathy were not severe impairments. She also contends that the ALJ improperly discounted Dr. Morrison's opinion concerning Wright-Cray's limitations and failed to consider her medication's side effects. The Commissioner disputes Wright-Cray's arguments and contends that the ALJ's decision is supported by substantial evidence.

I.     Step Two Findings

At Step Two, the ALJ reviews the record to determine whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is medically determinable if it "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Id. § 404.1521. "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source" but cannot be based on the claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." Id. An impairment is severe at Step Two if it significantly limits the claimant's ability to work. § 404.1520(c).

Wright-Cray argues that the ALJ erred in failing to find that her small fiber neuropathy and her migraines were severe impairments at Step Two. With regard to her small fiber neuropathy, she notes simply that it was indicated on a sweat test in 2022. See doc. no. 5-1 at 3 (citing Admin. Rec. at 494). Although the test Wright-Cray cites indicates "evidence of possible small fiber neuropathy," Admin. Rec. at 494, she does not explain how that result supports a finding of a severe impairment. Wright-Cray does not assert or point to any medical evidence in the record to suggest that any medical provider addressed or evaluated her possible small fiber

6

neuropathy. The test result, which is at best a provisional diagnosis,² is not evidence of a medically determinable impairment, much less a severe one. See, e.g., Larlee v. Soc. Sec. Admin. Comm'r, No. 2:14-CV-00228-JDL, 2015 WL 3400664, at *8 (D. Me. May 27, 2015) (a provisional diagnosis cannot provide the basis for a medically determinable impairment). Therefore, the ALJ committed no error with regard to her Step Two finding as to Wright-Cray's small fiber neuropathy.

Wright-Cray also argues that the ALJ erred at Step Two by failing to identify Wright-Cray's migraines as a severe impairment. She states that she experienced up to 10 headaches every month, with each one lasting more than five hours, and that she often needed to lie down for several hours during a migraine and sought treatment for her symptoms at an emergency department.

When determining that Wright-Cray's migraines were not a severe impairment, the ALJ noted that Wright-Cray took several medications for her migraines and that she had reported improvement with Botox. The ALJ also cited Dr. Green's opinion that Wright-Cray's migraines were non-severe, which was based in part on November 2022 medical records showing that medication had reduced Wright-Cray's headaches from daily to once every two weeks. Admin. Rec. at 22; id. at 89. The ALJ was entitled to resolve conflicts in the evidence and her Step Two finding regarding Wright-Cray's migraines is supported by substantial evidence. See Irlanda Ortiz, 955 F.2d at 769 (it is the ALJ's job to resolve conflicts in the evidence, not the court's).

Further, even if the ALJ had erred in her Step Two finding with regard to Wright-Cray's migraines, that would not entitle Wright-Cray to relief. "[W]here, as here, the ALJ finds at least

---

² "A provisional diagnosis is one to which the clinician is not yet committed and needs more information to confirm." LeBaron v. Massachusetts P'ship for Corr. Healthcare, No. CV 14-14138-LTS, 2017 WL 6767508, at *5 (D. Mass. Dec. 4, 2017) (quotations omitted).

one severe impairment and continues the sequential analysis, any error at step two is harmless unless the claimant can demonstrate that the error proved outcome determinative in connection with the later assessment of her residual functional capacity." McCusker v. Saul, No. 19-CV-853-PB, 2020 WL 6580598, at *6 (D.N.H. Nov. 10, 2020); Kimball v. Kijakazi, No. 21-CV-943-LM, 2022 WL 2702819, at *3 (D.N.H. July 7, 2022). The ALJ evaluated Wright-Cray's symptoms associated with her migraines when assessing Wright-Cray's RFC. Thus, Wright-Cray has failed to demonstrate any harmful error in the ALJ's Step Two determination.

II.   Dr. Morrison's Opinion

Wright-Cray also argues that the ALJ erred in finding unpersuasive Dr. Morrison's opinion that Wright-Cray had marked limitations in several areas. As discussed, the ALJ discounted Dr. Morrison's opinion because it was inconsistent with both Dr. Morrison's treatment notes and with Wright-Cray's own statements regarding her symptoms. Wright-Cray asserts that the ALJ ignored that "the daily functioning forms that the ALJ cited made frequent references to the variability in the Plaintiff's daily functioning due to her symptoms and inability to get out of bed some days." Doc. no. 5-1 at 4. She also notes that she "reported the need for assistance from her own father and her spouse in caring for her children due to her symptoms." Id.

When determining a claimant's RFC, an ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). The ALJ did that here. Although Wright-Cray points to certain of her own statements in medical records, as mentioned above, the ALJ discussed medical evidence that

8

conflicted with both Dr. Morrison's opinion and Wright-Cray's reports of her ability to perform household duties and take care of her children. Admin. Rec. at 21-22. Wright-Cray's complaint essentially "asks the court to reweigh the evidence before the ALJ and come to a different conclusion." Gorham v. Saul, No. 18-CV-853-SM, 2019 WL 3562689, at *7 (D.N.H. Aug. 6, 2019). That is not the court's role. See e.g., Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). The ALJ supportably explained why she did not adopt Dr. Morrison's opinion, and Wright-Cray has not shown any error in that evaluation.

III.     Medication Side Effects

Wright-Cray also contends that the ALJ's RFC assessment "appears contrary" to the side effects of Wright-Cray's medications. Doc. no. 5-1 at 4. She notes that she left her most recent job because of syncopal episodes and staring spells due to her Topamax prescription. And she testified that she continues to experience drowsiness because of her medications.

Even if this evidence were contrary to the ALJ's RFC assessment, the ALJ's decision is supported by substantial evidence. The ALJ noted that Wright-Cray's syncopal episodes and staring spells resolved in 2021 when her doctors stopped prescribing Topamax for her headaches. Admin. Rec. at 13, 712. Further, Wright-Cray's testimony as to her drowsiness from medications, which was brief and somewhat unclear,[3] does not undermine the ALJ's RFC assessment. Wright-Cray did not testify or point to any evidence in the record to suggest that her

---

[3] Wright-Cray testified that "gabapentin is supposed to make [her] drowsy." Admin. Rec. at 53. Her medical records show that she took gabapentin for back pain at some point in 2020, id. at 540, but stopped because it "did not help with pain and it made her sleepy," id. at 481. William White, PA, prescribed a much lower dose of gabapentin for her anxiety in June 2023, shortly before the hearing. Id. at 901. Wright-Cray's testimony is unclear as to whether her current dose of gabapentin continues to make her drowsy, and she states in her motion that she can "not identify which specific medication was the cause" of her drowsiness. Doc. no. 5-1 at 4.

9

drowsiness limits her in any way. Regardless, with "respect to [Wright-Cray's] claim that her medications make her drowsy, the ALJ implicitly considered any limiting effects that the side effects of [Wright-Cray's] medications may have had on her functional capacity when considering her activities of daily living in assessing her RFC." Mendez v. Berryhill, No. CV 17-10069-JGD, 2018 WL 3029048, at *15 (D. Mass. June 18, 2018). See Admin. Rec. at 17-18. As such, Wright-Cray has shown no error.

## Conclusion

For the foregoing reasons, the Commissioner's motion to affirm (document no. 8) is granted. Wright-Cray's motion to reverse (document no. 5) is denied. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

August 7, 2025

cc: Counsel of Record.